DETROIT & SECURITY TRUST CO. *v.* GITRE.

SAME *v.* SAME.

1. DEEDS—DESTRUCTION DID NOT RESTORE TITLE TO GRANTOR.
    Destruction of unrecorded deed did not restore title to grantor,
    but it remained in grantee.

2. FRAUDULENT CONVEYANCES—DEEDS—DESTRUCTION OF DEED.
    Where, at time judgment debtor deeded property to his nephew
    he had previously deeded it to his brother, which deed was
    destroyed without recording, debtor had no interest to con-
    vey, and therefore second deed was not in fraud of his
    creditors.

3. FRAUDS, STATUTE OF—HUSBAND AND WIFE—ORAL AGREEMENT.
    Oral agreement of husband to put all of his property in joint
    names of himself and wife, in connection with their reconcilia-
    tion after wife had filed suit for divorce, did not give her
    title or create debt from husband to her.

4. FRAUDULENT CONVEYANCES—PRIMA FACIE CASE—BURDEN OF
    PROOF.
    Where, in judgment creditors' suit to reach property claimed
    to have been conveyed by judgment debtor in fraud of cred-
    itors, plaintiffs made *prima facie* case, burden rested on de-
    fendants to show that conveyance was *bona fide* (3 Comp.
    Laws 1929, § 14617).

5. SAME—PRESUMPTIONS.
    Although presumption created by statute vanishes and is not
    to be weighed against evidence when defendants make showing
    of *bona fide* conveyance by credible evidence, yet this does
    not relieve them of burden of producing evidence of existence
    of every essential of good faith.

6. SAME—CONVEYANCE FROM FATHER TO SON—ADEQUACY OF CON-
    SIDERATION.
    Where no rights of creditors intervene, transfer from father to
    son in payment of services is lawful and adequacy of consider-
    ation unimportant, but where creditors are interested, trans-
    action is subject to close scrutiny and fairness of considera-

---

As to right of married woman to recover for services rendered by
her outside the home, see annotation in L. R. A. 1917E, 282.

Validity of contract by husband to pay wife for services rendered
in carrying on his business, see annotation in 23 A. L. R. 18.

Burden of proof as to consideration for transfer from husband to
wife, see annotation in 56 L. R. A. 828.

tion is material, and where it assumes to be in payment of antecedent debt, consideration must not be disproportionately small as compared with value of property or obligation obtained (3 Comp. Laws 1929, § 13394).

7. SAME—JUDICIAL NOTICE—EVIDENCE OF VALUE NECESSARY.

Where property conveyed by father to son in consideration of latter's services was far outside ordinary run of human experience, court may not take judicial notice of adequacy, but affirmative evidence is required to justify holding that it was ' fair, in suit to set conveyance aside as in fraud of creditors.

8. SAME—BURDEN OF PROOF—BONA FIDES OF TRANSACTION.

Burden of showing that conveyance of property by father to son was *bona fide* and not in fraud of creditors (3 Comp. Laws 1929, § 14617) was not met by testimony that it was in consideration of son's services, where property was worth much more than such services ordinarily would be worth, and there was no proof of value of said services.

9. HUSBAND AND WIFE—RIGHT OF MARRIED WOMAN TO EARNINGS—STATUTES.

Right of married woman to earnings acquired by her as result of her personal efforts (3 Comp. Laws 1929, § 13061) covers services performed by her for others than the family as well as apart from her household duties.

10. SAME—HUSBAND NOT OBLIGATED TO PAY WIFE FOR SERVICES—STATUTES.

The statute (3 Comp. Laws 1929, § 13061) does not convert marital relationship into business partnership nor raise money debt from husband to wife for her services to him, even though they take her outside the strict ambit of domestic circle, and consist of aid to him in business.

11. FRAUDULENT CONVEYANCES—CONSIDERATION.

Agreement by son to support his mother did not furnish consideration for conveyance to him of father's property as against rights of latter's creditors.

12. SAME—ASIDE FROM EXEMPTIONS DEBTOR'S PROPERTY SUBJECT TO CREDITORS' CLAIMS.

Aside from exemptions allowed by law, all property of debtor is subject to claims of creditors, and those claims may not be defeated by conveyance which secures to debtor future fruits of property.

13. SAME—EXECUTION—DISSOLUTION—CERTIORARI.
    On certiorari to review order of court below dissolving attachment levied on property claimed to have been conveyed in fraud of creditors, on petition of grantee under 3 Comp. Laws 1929, § 14810, order is set aside on finding that said conveyance was void.

Appeal from Wayne; McMahon (Maurice H.), J. Submitted January 20, 1931. (Docket No. 136, Calendar No. 35,460.) Decided April 7, 1931. Rehearing denied June 25, 1931.

Bill in aid of execution by Detroit & Security Trust Company, a Michigan corporation, and others, executors, against Lester W. Gitre and others. Decree for defendants. Plaintiffs appeal. Affirmed in part, reversed in part.

Certiorari to Wayne; McMahon (Maurice H.), J. Submitted January 20, 1931. (Docket No. 162, Calendar No. 35,455.) Decided April 7, 1931.

Attachment proceedings by Detroit & Security Trust Company, a Michigan corporation, and others, executors, against Lester W. Gitre. On petition of Stanley A. Gitre the writ was dissolved. From an order denying motion to set aside dissolution of the writ, plaintiffs bring certiorari. Reversed, and dissolution set aside.

*Wurzer & Wurzer* (*John T. Higgins* and *Alfred N. Slaggert,* of counsel), for plaintiffs.

*Louis Starfield Cohane* and *Regene Freund Cohane* (*Abbott & Coulter,* of counsel), for Stanley A. Gitre.

*Henry Fischer* and *Ray V. Richards* (*Sempliner, Dewey, Stanton & Bushnell,* of counsel), for defendants George C. and Delos Gitre.

FEAD, J.   This is a bill, filed February 25, 1930, in aid of execution.  The court accepted defendants' testimony, which was substantially undisputed, and dismissed the bill.

On July 9, 1929, plaintiffs brought suit against Lester Gitre for rent due on a lease expiring in 1932. About October 11th the attorneys, Lester Gitre, and his son Stanley had a conference, in which Lester proposed surrender of the lease and his own discharge from further liability on it.  The offer was refused, plaintiffs' attorney insisting on the obligations of the lease, pointing out that Lester was financially responsible through ownership of a large number of lots in Gitre Park subdivision in Detroit, and that plaintiffs would look to the lots for satisfaction of the rent due and to become due.

On November 5th, Lester conveyed, partly to Stanley and partly to his nephew Delos, the Gitre Park lots and other property in Michigan, California, and Canada.  There was some indefinite testimony of his retaining a piece of land near Niles, Michigan, which he later sold, but the property was not identified as to character, value, or time of sale sufficiently to warrant its consideration here in mitigation of the effect of the conveyances at bar.

Plaintiffs levied on the Gitre Park lots which, in his pleadings, Stanley stated are worth $100,000. The separate value of the lots deeded to Stanley and Delos respectively was not shown.    Plaintiffs claimed the transfers were in fraud of creditors. Defendants claimed they were *bona fide* and for valuable and adequate consideration.  Lester Gitre did not testify.  As the conveyances present different considerations, they will be treated separately.

### Delos Gitre Deeds

Delos claims to hold as trustee for his father, George Gitre. In 1926, George transferred these Gitre Park lots to Lester in at least partial fraud of creditors. On the same day, Lester deeded them back to George. George said he held the deeds unrecorded to prevent his wife and her children from taking an interest in them. When Lester became financially involved in 1929 and something had to be done about the record title, instead of recording the deeds a new conveyance was made from Lester to Delos in verbal trust for George, in order to escape the wife's claim. The unrecorded deeds were destroyed by the attorney who conducted the conveyances. The trust has become written by the pleadings in this case.

The testimony did not show that Lester was given credit by plaintiffs upon the strength of the record title of these lots, and the question of the rights of the parties, had such credit been given, is not before us. Nor are we here concerned with the rights of George's wife. We agree with counsel for George and Delos Gitre that, through the unrecorded deeds, George had title, it was not restored to Lester by the destruction of the deeds, and George is still the owner of the lots. *Tabor* v. *Tabor*, 136 Mich. 255. As Lester did not own the lots, they are not subject to execution against him.

As to this property the decree will be affirmed, but without costs.

### Stanley Gitre Deeds

Defendants claimed they paid fair consideration for these conveyances, running both from Stanley and his mother to Lester. The deeds covered sev-

eral lots in Ontario as well as those in Gitre Park. The claimed considerations were:

*First:* Debt owing by Lester to Stanley for work. Stanley was born in 1907. From the time he was 14 years old he worked in his father's drug stores after school, Saturdays, and during vacations, receiving board and room and wages of $18, increasing to $35 per week, until about 1925. He attended school and a military academy until he was about 18, when he was sick for approximately six months, and then worked on his father's poultry farm until it was sold, some seven months after Stanley became of age. He said his father promised him for his labor a $12,000 drug store and the $70,000 chicken farm. On receiving the deeds in 1929, he released his father from the oral agreement and all claims for labor and otherwise. The value of his services was not shown.

*Second:* Debt owing by Lester to his wife for labor. When Lester and Mrs. Gitre were married, they were poor and Mrs. Gitre worked for their mutual benefit, aiding her husband in accumulating his property. She took boarders and roomers to finance an education for him and later worked in the drug stores. She claimed the value of her services as part consideration for the transfer to Stanley, but offered no evidence of their worth.

Lester and his wife were not happy together. Mrs. Gitre had filed suit for divorce in 1926, and later discontinued it. She testified that, in connection with the reconciliation in 1926, Lester promised to put all of his property in their joint names. However, no conveyances were actually made to her, as in the cases relied on by defendants, and the oral agreement neither gave her title nor created a debt from her husband to her.

*Third:* Property settlement on wife. In connection with the conveyances on November 5, 1929, Lester and Stanley executed an agreement, not referred to in the deeds, reciting that Lester was about to remove from the city, wanted to permanently provide for the support of his wife, Stanley was willing to assume the burden in consideration of the transfer of the property, that the transfer was accordingly made, Stanley agreed to support his mother for the balance of her life, the obligation to be charged against the real estate conveyed, and Stanley should always hold at least $10,000 in fair value of the real estate for the protection of Lester and the mother in the faithful performance of the agreement of support. Mrs. Gitre executed a consent to the instrument, in full of all her claims for dower, alimony, support, and share in the real estate and property accumulated by Lester and herself through their joint efforts.

*Fourth:* Defendants claimed Stanley gave his father $390 and Mrs. Gitre gave him $1,500 to invest in some lots with the understanding that title would be taken in their joint names, but Lester did not do this, and the property was later disposed of by him.

Plaintiffs made a *prima facie* case under 3 Comp. Laws 1929, § 14617, and the burden then rested on defendants to show that the conveyances were *bona fide.* This means that defendants had the burden of producing credible evidence of a *bona fide* conveyance. It is true that when such showing is made the presumption vanishes and is not to be weighed against the evidence (*Schick* v. *Levine,* 247 Mich. 595; *Corbett* v. *Williams,* 248 Mich. 541), but this does not relieve defendants of the burden of pro-

ducing evidence of the existence of every essential of good faith.

From the sequence of events, it is plain that both Lester and Stanley intended to put the property beyond plaintiffs' reach. Their evident purpose was to make a property settlement with Mrs. Gitre, provide for Stanley, and leave plaintiffs' claim unpaid.

Where no rights of creditors intervene, a transfer from father to son in payment of services is lawful and the adequacy of the consideration unimportant. Even a gift is legal. But where creditors are interested, the transaction is subject to close scrutiny and the fairness of the consideration material. Where it assumes to be in payment of an antecedent debt, the consideration must be not "disproportionately small as compared with the value of the property or obligation obtained." 3 Comp. Laws 1929, § 13394.

There was no evidence of the value of the services performed by Stanley nor of the worth of the property received by him from which the fairness of the consideration may be found. The proposition that the services of a schoolboy have been of sufficient value to his father to constitute an adequate consideration for the properties Stanley claimed his father agreed to convey to him is so far outside the ordinary run of human experience that the court cannot take judicial notice of the adequacy, but affirmative evidence would be required to justify a holding that it was fair. *First National Bank* v. *Engel*, 245 Mich. 185. Defendants did not sustain the burden on this item of consideration.

Aside from the fact that there was no evidence of their value, the services performed by Mrs. Gitre for her husband afforded no consideration for the

transfer. The right of a married woman to the "earnings acquired by any such married woman as the result of her personal efforts," 3 Comp. Laws 1929, § 13061, covers services performed by her for others than the family as well as apart from her household duties. *Gregory* v. *Oakland Motor Car Co.*, 181 Mich. 101; *Sorensen* v. *Sorensen,* 211 Mich. 429; *In re Moon's Estate,* 219 Mich. 104. The statute does not convert the marital relationship into a business partnership nor raise a money debt from husband to wife for her services to him, even though they take her outside the strict ambit of the domestic circle, and consist of aid to him in his business.

Nor did the agreement of the son to support the mother furnish a consideration for the transfer. The contract purported to release Lester Gitre from performance of a future duty to his wife, so he would retain the continuing benefit of his property, a benefit which belongs to his creditors. Aside from the exemptions allowed by law, all property of a debtor is subject to the claims of creditors, and those claims cannot be defeated by a conveyance which secures to the grantor the future fruits of the property. *Walker* v. *Cady,* 106 Mich. 21; *Rynearson* v. *Turner,* 52 Mich. 7; 27 C. J. p. 559; *Annis* v. *Bonar,* 86 Ill. 128; *Bank of Versailles* v. *Guthrey,* 127 Mo. 189 (29 S. W. 1004, 48 Am. St. Rep. 621).

In view of the court's acceptance of defendants' testimony and the failure of plaintiffs to present circumstances which tend to contradict the cash items of $390 and $1,500, respectively, they must be held proved. However, it was not shown that the Ontario real estate is not ample to compensate for these advances and they cannot be allowed as against the Gitre Park lots.

As to the conveyances to Stanley Gitre, the decree will be reversed and one may be entered subjecting the property to plaintiffs' levy, with costs against both Lester and Stanley.

### Attachment Proceedings

On March 3, 1930, plaintiffs commenced another action against Lester Gitre for rent due and to become due under the lease, and levied an attachment on the Gitre Park lots. Stanley Gitre filed petition for dissolution of attachment under 3 Comp. Laws 1929, § 14810, which changed the former law, 3 Comp. Laws 1915, § 13075, to permit such petition to be filed by "any other person not a party to the suit" whose property is attached. After partial hearing, counsel stipulated that the testimony given in the chancery suit be used as a basis for determination of the petition. On finding Stanley's title good, the court dissolved the attachment and plaintiffs review by certiorari, submitted herewith.

Counsel raised many points as to practice, which need not be considered because, as we have found that Lester Gitre's deed to Stanley is void as to creditors, it follows that the order dissolving the attachment will be set aside, with costs.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.