### TIMMER *v.* PIETRZYK.

1. FRAUDULENT CONVEYANCES—BANKRUPTCY—EVIDENCE.

In action by trustee in bankruptcy against bankrupt's widow, her son, her brother and his wife to set aside conveyances alleged to have been made in fraud of creditors, evidence *held*, to justify finding of court that transfers were made to hinder and defraud bankrupt's creditors (3 Comp. Laws 1929, § 13434).

2. SAME—SUSPICIOUS CIRCUMSTANCES—FRAUD.

While fraud will not be inferred from suspicious circumstances, yet when such suspicious circumstances are coupled with some facts showing fraud, conveyances resulting from such transactions may be set aside.

Appeal from Kent; Brown (William B.), J. Submitted April 3, 1935. (Docket No. 43, Calendar No. 38,322.) Decided June 3, 1935.

Bill by Fred G. Timmer, trustee in bankruptcy of Walter Pietrzyk, against Wladyslawa Pietrzyk, Chester Pietrzyk, Max Zbronski and Janina Zbronski to set aside conveyances of real estate, for an accounting and other relief. Decree for plaintiff. Defendants Pietrzyk appeal. Affirmed.

*Francis L. Williams,* for plaintiff.

*Glocheski & Glocheski,* for defendants.

EDWARD M. SHARPE, J.   This is an action brought by plaintiff, Timmer, as trustee in bankruptcy for Walter Pietrzyk against the defendants to have certain conveyances set aside on the ground that they were fraudulent and were made to deprive the bankrupt's creditors of certain of his assets.   From the available records we find that Mrs. Pietrzyk married Walter Pietrzyk in 1912 and shortly afterwards located in Grand Rapids where they later conducted a combined grocery store and butcher shop.

October 23, 1928, one Mary Zajdel recovered a judgment against Walter Pietrzyk in the sum of $2,000.   On January 16, 1929, an involuntary petition in bankruptcy was filed against Walter Pietrzyk in the United States district court at Grand Rapids on which adjudication was made February 20, 1929. Subsequently, the trustee filed a petition in the same court for a summary order requiring the bankrupt to turn over to the trustee property and money fraudulently concealed and transferred by him.   This petition resulted in an order being made by the district judge as of January 2, 1931, requiring the bankrupt to turn over $5,000 to the trustee.   Upon failure to comply with this order, Walter Pietrzyk was committed to jail February 17, 1931, and remained there until February 20, 1932, when he was released after filing a petition that he had no money or property and was, therefore, unable to comply with the court order.   The bankrupt died shortly after his release from jail and prior to the institution of the present suit.

The record discloses the following facts in relation to the banking transactions of the parties involved

in the present suit. On October 23, 1928, the Zajdel judgment was rendered against Walter Pietrzyk. It appears that October 24, 1928, Walter Pietrzyk withdrew from Old Kent Bank, West Fulton Branch, $688.17; on the same date $721 was deposited in the same bank in the name of Mrs. Walter Pietrzyk; on the same date a draft for $688.17 payable to Mrs. Pietrzyk was issued. This draft was indorsed by Mrs. Pietrzyk and cleared October 25, 1928, being cashed at the Stocking and Fourth branch of the Grand Rapids National Bank. At the time of the transaction at the Old Kent Bank, Mr. and Mrs. Pietrzyk were in the bank together. Mrs. Pietrzyk's maiden name was Wladyslawa Zbronski. The same records of the Old Kent Bank show Mrs. Pietrzyk under her maiden name deposited $1,000 January 7, 1929, and the account was closed July 2, 1929, by the payment of $1,010 to her.

The records of the Grand Rapids National Bank show that Walter Pietrzyk withdrew $6,090 on October 17, 1928. On November 28, 1928, Pietrzyk deposited $2,000 in the same bank under the name of his relative Tony Bera or Cera, 1738 Winchester St., Chicago. This was increased to $3,400 and the $3,400 was withdrawn January 5, 1929, by Walter Pietrzyk and it was paid to him.

On January 29, 1929, the same bank issued a certificate of deposit F3622 to Max Zbronski for $3,000. It was indorsed both by Zbronski and Mrs. Pietrzyk and was paid February 8, 1929. On June 26, 1929, Mrs. Pietrzyk opened an account in the same bank for $2,500. This account was closed July 2, 1929, by the payment of $2,500 to Mrs. Pietrzyk. On the same date, the same bank issued a certificate of deposit, F3995, to Mrs. Pietrzyk for $3,000. December 5, 1929, she received from the same bank certificate of

deposit, F4298, for $1,730. It was paid to her February 18, 1930. June 30, 1930, Mrs. Pietrzyk procured another certificate of deposit for $500, F4500, payable to herself or Max Zbronski. It was paid to Max Zbronski July 7, 1930.

Max Zbronski, the brother of Mrs. Pietrzyk, on June 10, 1931, signed an unrecorded mortgage to Walter Pietrzyk and wife on the property known as the south 39 feet of lots 29 and 30, block 4, Davis, Turner & Carroll's 8th Ward Addition, in the sum of $2,500. In September, 1932, Mrs. Pietrzyk asked Louis Jackowski to draw a mortgage in the sum of $2,975 from Max Zbronski and wife, Janina, to Chester Pietrzyk, the son of Mrs. Pietrzyk. This was done and the mortgage was recorded. No consideration was given for the recorded mortgage. The old one was never recorded. In May, 1932, Mrs. Pietrzyk purchased a land contract on the property known as 632–636 Sixth Street, Grand Rapids, Michigan, for $2,360 cash which she paid herself and had this placed in the name of her son.

During the time that the bankrupt was in jail, Mrs. Pietrzyk conducted the business under her own name. Her first bank account was opened with the Grand Rapids National Bank April 24, 1927. She also deposited some money with the Federal postal savings department. In May, 1932, she purchased a land contract from the Polish American Bank, paying therefor the sum of $2,360, and prior to September 20, 1932, she had made loans to Zbronski, her brother, and on that date received from him a mortgage for $2,975, title of which was taken in the name of Chester Pietrzyk. The son was also named as mortgagee in the mortgage. Subsequent to the commencement of the present action, the defendant Mrs. Pietrzyk paid nearly all of the creditors of the

bankrupt without the knowledge or consent of the trustee and after their claims were allowed in the bankruptcy court.

The trial court found that the money used to purchase the land contract and the mortgage was part of the assets of Walter Pietrzyk and that the transfers to the son, Chester, were made to hinder and defraud the creditors of the bankrupt. The defendants contend that there is an utter lack of evidence to substantiate the findings of the trial court. 3 Comp. Laws 1929, § 13434, provides:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and any charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void."

"Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and the number concurring in the same case, and may be overcome by evidence establishing the *bona fides* of the transaction. However, a concurrence of several badges will always make out a strong case." 27 C. J. p. 483.

We find in the instant case that within a few days prior to the rendition of the judgment against him, Walter Pietrzyk withdrew $6,090 from the Grand Rapids National Bank, no part of which was paid into the bankruptcy court or satisfactorily accounted for except through the manipulation of the defendants herein. The bank records of the Old Kent Bank

definitely show that $1,307.17 was transferred from Walter Pietrzyk to Mrs. Pietrzyk. It is also shown that prior to October 17, 1928, Mrs. Pietrzyk did not have sufficient money in the banks and the postal savings department to finance either of the transactions complained of, nor are we unmindful of the fact that both of these transactions occurred in 1932 and at a time when the economic conditions were at a low ebb. In addition to these facts and circumstances we find that the defendant Mrs. Pietrzyk had no recent bank deposits nor a satisfactory explanation of the amounts and dates of her deposits in the postal savings account. While it is true as contended by defendants that fraud will not be inferred from suspicious circumstances (*Miller* v. *Beadle,* 65 Mich. 643), yet when such suspicious circumstances are coupled with some facts showing fraud, all of such transactions may be set aside.

The decree of the lower court is affirmed, with costs to plaintiff.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.